IN THE UNITED STATES DISTRICT COURT

CENTRAL DIVISION, DISTRICT OF UTAH

| | | |
|---|---|---|
| VIVIANN ROSE-VELASQUEZ | : | Case No. 2:06-CV-00297 TS |
| Plaintiff, | : | REPORT AND RECOMMENDATION |
| vs. | : | Judge Ted Stewart |
| JO ANNE B. BARNHART, Commissioner of Social Security, | : | Magistrate Judge Brooke C. Wells |
| | : | |
| Defendant. | : | |
| | : | |

This matter comes before the Court on Plaintiff Vivian Rose-Velasquez's (Velasquez) request for appeal. Velasquez brought this action pursuant to 42 U.S.C. §405(g) and seeks review of the final decision of the Commissioner of Social Security denying her claim for supplemental security income (SSI) under Title II of the Social Security Act.[1]  The Court has carefully reviewed the administrative record and the litigant's pleadings.  For the reasons addressed below, the decision of the Commissioner should be REVERSED.

---

[1]*See* 42 U. S. C. A. §§ 1381-83(c) (2000).

## BACKGROUND

Velasquez is a fifty-three-year-old resident of Moab, Utah. She completed high school and has earned sufficient credits at various universities which qualify her as a senior. (Administrative Record, hereinafter "R" at 25).

Velasquez's previous work experience includes working as a legal secretary, administrative assistant, housekeeper, kitchen helper, data entry person, photographer, artist and a bus person.(R.36)  On September 24, 2002, she filed an application for SSI with a protective filing date of May 8, 2002, alleging she became disabled and unable to work on November 24, 2000, due to multiple mental and physical impairments.(R.21)  The medical professionals who treated or examined Velasquez noted that she had mild cystic fibrosis, low back strain secondary to overuse, asthma, attention deficit disorder (ADD), personality disorder with paranoid, borderline and obsessive compulsive features, mood disorders and a history of substance abuse, which qualified as "severe" under the Regulations.[2]  Her earnings statement indicated an income of $37.50 in 2002.(R.86)  Velasquez claimed that her only income after September 2003 was $250 per month earned as a self-employed artist.(R.22)

Her claims were denied both initially and subsequently following a review.  On March 23, 2005, Velasquez requested a

---

[2] 20 C. F. R. § 416.920(c).

2

hearing before an Administrative Law Judge (ALJ).  The ALJ denied Velasquez's SSI claims under §§ 1602 and 1614(a)(3)(A) of the Social Security Act.  Specifically, the ALJ found that Velasquez retained the residual functional capacity (RFC) to perform a significant range of light work with limitations; that she was able to perform some of her past relevant work (PRW); and that there are significant number of jobs in the national economy she could perform.(R.38,39)  On March 23, 2005, the ALJ's decision became final for purposes of judicial review under 42 U.S.C. §405(g).  On October 2, 2006, Velasquez filed this appeal.

## MEDICAL HISTORY

Velasquez is allegedly unable to sustain employment due to a combination of physical and mental impairments including a mild form of cystic fibrosis, asthma, depression, borderline personality disorder with paranoid and obsessive-compulsive features and prolonged drug and alcohol abuse.  Her intelligence and aptitude tests for reading and spelling were significantly higher than her Full Scale IQ, reflecting over-achievement in school.(R.26)  Her personality scores suggested that she is a fearful, irritable and emotionally reactive person, who feels overwhelmed by demands and expectations.(R.26)  She has moderate limitations up to one third of the time in her ability to understand, remember and carry out detailed instructions.(R.38)

Based on the record, Dr. Jonas Munger, one of Velasquez's

treating physicians, noted that her condition would progressively decline and it was unknown when she could return back to work.(R.426)  Steven Rouzer, an examining physician, reported that Velasquez's mental state was grossly intact.(R.24, 25) Blair McGirk, an examining physician, who Velasquez saw at the request of the disability determination services, noted that "the claimant had a history of cystic fibrosis, asthma, depression and mild hypertension."(R.25)

Dr. Richard Kirkham, a psychologist, who performed an evaluation on Velasquez assessed a Global Assessment of Functioning Scale (GAF)[3] score of 48[4] and indicated that claimant was suffering from severe depression associated with low energy levels, emotional instability, lack of motivation, isolation and an elevated range of suicidal thoughts.(R.311)  A.L. Carlisle, a psychologist, who the claimant saw at the request of the state disability determination services, stated that claimant suffered from severe depression due to the instability in her life.(R.283, 352)  Carlisle also opined Velasquez's instability was likely to continue and as a result she is severely disabled.(R.283, 352) Dr. Gen Numaguchi, a psychologist, diagnosed "the claimant with

---

[3]American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders,* 4th Edition (2000).  Global Assessment Functioning Scale (GAF) considers psychological, social and occupational functioning on a hypothetical continuum of mental-health illness.  It does not however include impairment due to physical or environmental limitations.

[4]A GAF score of 48, includes serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job).

major depressive disorder, recurrent, moderate amphetamine abuse, alcohol abuse and borderline personality disorder."(R.28)  He assigned Velasquez's medical condition a GAF of 50[5], indicating serious symptoms.(R.28)  "He recommended that she enter brief intervention through individual therapy to sort out her personal goal issues, decide on her treatment needs for depression, and manage her short term issues including interpersonal conflicts."(R.28)

Patsy Christofferson, Velasquez's therapist, noted that claimant suffered from depression with poor concentration, a sense of helplessness, irritability and anhedonia.(R.294)  Kathryn Kemp, a long term therapist, noted Velasquez "does not seem to be able to get along with people very well."(R.357)  Kemp also stated that Velasquez suffered from hyperactivity, did not have good judgment and suffered from a severe from of depression. (R.357)

Velasquez's medical record was also supplemented by the opinions of non-examining state agency medical consultants. After evaluating the medical record, state agency physicians noted 10 significant limitations out of 20 functionally assessed areas.  However, based on the record the parties have not distinguished what specific opinion each non-examining state

---

[5]A GAF of 50 indicates serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job).

agency physician has given as to Velasquez's medical condition.[6]
Specifically, their opinions noted mild to moderate limitations
in Velasquez's attention to detail, interaction with the general
public, execution of work responsibilities, and ability to get
along with co-workers.(R.383-85)[7]   In addition, their evaluation
noted mild to moderate limitations in Velasquez's ability to
concentrate for prolonged periods of time, to work without
supervision, to complete a normal work week without interruptions
from her psychologically based symptoms and to independently set
realistic goals.(R.383-84)[8]

Kenneth Lister, a vocational expert (VE), testified that
Velasquez had previously engaged in light and sedentary work and
that "she is capable of making a vocational adjustment to other
work."  He also noted that claimant could work as office helper
and a house sitter.(R.37)

---

[6]State agency physicians did not examine the claimant.  Instead they provided specific reasons for their
opinions about the claimant's residual functional capacity based on the evidence in the case.

[7]Specifically claimant's moderate limitations are in her ability: 1) to understand and remember detailed
instructions; 2) to carry out detailed instructions; 3) to work in coordination with or proximity to others without
being distracted by them; 4) to interact appropriately with the general public; 5) to accept instructions and respond
appropriately to criticism from supervisors; 6) to get along with coworkers or peers without distracting them or
exhibiting behavioral extremes.  Also, the state physicians noted some mild to moderate limitations in the following
areas: 1) to maintain attention and concentration for extended periods; 2) to sustain an ordinary routine without
special supervision; 3) to complete a normal workday and workweek without interruptions from psychologically-
based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and
4) to set realistic goals or make plans independently of others.

[8]*See also* R.383 Velasquez has a moderate limitation in carrying out detailed instructions. *See* R.384
Velasquez has moderate limitation in the ability to complete a normal workweek and workday without any
interruptions; in the ability to interact with the public and accept instructions from superiors.

## STANDARD OF REVIEW

In reviewing a disability evaluation by the Commissioner, district courts are limited to determining whether the decisions are based on substantial evidence.[9]  Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10]  If such substantial evidence exists, the final decision of the Commissioner must be affirmed.[11]  Substantial evidence "requires more than a scintilla, but less than a preponderance," and is satisfied by "such evidence that a reasonable mind might accept to support the conclusion."[12]  The record as a whole must be considered in drawing a conclusion.[13]

## ANALYSIS

A person is considered disabled if she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment...which has lasted or can be expected to last for a continuous period of not less than twelve months...."[14]  Any disability evaluation under the Social

---

[9]*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *See* also, *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1998).

[10]*Perales*, at 401; *See* also, *Teter v. Heckler*, 775 F.2d 1104, 1105 (10th Cir. 1985).

[11]*Cagle v. Califano*, 638 F.2d 219, 220 (10th Cir. 1981) (Citations omitted).

[12]*Sorenson v. Bowen*, 888 F. 2d 706 (Utah 1989).

[13]*Dollar v. Bowen*, 821 F.2d 530, 532 (10th Cir. 1987).

[14]*See* 42 U. S. C. A. §1382c (a) (3) (A).

Security Act is subjected to a five-step sequential process.  The five steps are: 1) whether the claimant is working; 2) whether claimant's impairment is severe; 3) whether the impairment meets or equals an impairment listed in the Regulations; 4) whether the claimant has performed PRW; and 5) whether there is other work claimant could perform considering claimant's functional capacity, age, education, and past work experience.[15]  The Social Security Act further provides that an individual is considered disabled only if the individual's physical or mental impairments are of such severity that the individual is not only unable to perform previous work, but cannot when considering the individual's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.[16]

Under the Act, a claimant carries the initial burden of proving a physical or mental impairment that prevents them from engaging in prior work activity.[17]  Once a claimant has done so, the burden shifts to the Commissioner to show that the claimant retains the ability to do other work that exists in the national economy.[18]

---

[15]*See* 20 C. F. R. §404.1520 (1991); 20 C. F. R. §416.920 (1991).

[16]42 U.S.C. §423 (d)(2)(A), §1382c(a)(3)(B) (1982 and Supp. III 1985).

[17]20 C. F. R. §§ 404.1520(e)-416.920(e).

[18]*Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

Here, Velasquez raises two objections to the Commissioner's decision.  First, she contends the ALJ erred at step four of the sequential evaluation process when the ALJ did not consider her medical record along with the drug and alcohol abuse in assessing her RFC.  Second, Velasquez argues the ALJ erred at step five of the sequential evaluation process when the ALJ determined that Velasquez could perform other skilled jobs available in the national economy.

**I. The ALJ erred in finding that Velasquez was able to perform her past relevant work based on her residual functional capacity and therefore not eligible for supplemental security income.**

At step four of the sequential evaluation process, the burden of proof lies with the claimant to show that she is not able to perform PRW because of her RFC.  However, in making the determination that a claimant has the RFC to perform PRW, the ALJ still has a duty to make the requisite factual findings pursuant to SSR 82-62.[19]  This is done by looking at the "residual functional capacity and the physical and mental demands"[20] of the claimant's PRW.

RFC is defined as the maximum degree to which a claimant

---

[19]*See* <u>SSR 82-62</u>. In finding that an individual has the capacity to perform past relevant work, the determination or decision must contain among the findings the following specific findings of fact: 1) A finding of fact as to the individual's residual functional capacity (RFC); 2) A finding of fact as to the physical and mental demands of the past job/occupation; 3) A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

[20]<u>20 C. F. R. §§ 404.1520 (e)</u> and <u>416.920 (e)</u>.

retains the capacity for sustained performance of the physical and mental requirements of certain work.[21]  In determining a claimant's RFC, opinions of physicians who have treated a patient over a period of time or who are consulted for purpose of treatment are given greater weight than are reports of physicians employed and paid by the government in defending a disability claim.[22]  A treating physician's opinion, however, may be rejected if the Commissioner gives specific, legitimate reasons for doing so.[23]  In determining whether a claimant has the RFC to perform PRW, the ALJ must also assess the physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling,

stooping or crouching).[24]

PRW is work done within the past 15 years, which was a substantial gainful activity (SGA), and lasted long enough so that a claimant can learn how to do it.[25]  In determining whether work qualifies as PRW, the ALJ usually looks to the claimant's

---

[21]20 C. F. R. §416.945.

[22]*Broasbent v. Harris*, 698 F.2d 407, 412 (10th Cir. 1983) (quoting *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980).

[23]*Eggleston v. Bowen*, 851 F.2d 1244, 1246 (10th Cir. 1998) (Citations omitted).

[24]20 C. F. R. §§ 404.1545(b), 416.945(b).

[25]20 C. F. R. §404.1560.

employment including how long ago the work was performed, how long the work lasted, and whether the work was performed at substantial gainful activity levels.(R.36)  According to SSR 82-62, the ALJ must make three specific findings in determining whether a claimant has the capacity to perform PRW.[26]  The findings address the claimant's RFC, the physical and mental demands of PRW, and whether the claimant's RFC would allow the claimant to perform PRW.[27]

**a. Velasquez's Residual Functional Capacity**

When determining a claimant's RFC, the ALJ is required to develop and explain fully how the RFC determination was made.[28] Velasquez first argues the ALJ erred in denying her SSI claim when the ALJ found that "the claimant is able to perform some of her past relevant work."  Velasquez claims the ALJ failed to consider the opinions of her treating or examining medical professionals in making RFC findings.(R.36)  Based on the record some of the treating or examining medical professionals indicated that Velasquez suffers from a serious level of impairment.[29]  In determining the severity of Velasquez's impairments the treating or examining medical professionals assessed GAF scores between

---

[26]See *Supra* note 13.

[27]*Id.*

[28]Supra *note* 13.

[29]*See* p.2-6 of the Medical History in this decision.

32-62.[30]

In her decision the ALJ emphasized that "consideration also has been given to the reports of State agency medical consultants as well as to other treating, examining and non-examining medical sources." The ALJ addressed Velasquez's chest x-ray, a spirometry testing, the medical diagnosis of Dr. Munger and Dr. Atkin, and the testimony of the non-examining state agency medical consultants. The ALJ failed, however, to consider the evaluations by psychologist Carlisle, therapists Christofferson and Kemp, Dr. Kirkham and Dr. Rouzer. Based on her use of limited medical resources to find that "the claimant retains the residual functional capacity to perform light work activity with limitations," the ALJ failed to include all available medical evidence[31] in her analysis.

After addressing the chest x-ray, which confirmed Velasquez's cystic fibrosis, the ALJ discounted the significance of Dr. Munger's lengthy treatment relationship with the claimant, because "it is unsupported by detailed progress notes measuring

---

[30] A GAF score of 32, includes an impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in work or school, family relations, judgment, thinking or mood associated with depression. A GAF score of 62, includes some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning, but generally functioning well, has some meaningful interpersonal relationships.

[31] *See* p.8 and 9 of this decision for specific diagnosis given by Velasquez's treating or examining medical professionals.

the claimant's physical abilities."[32](R.35)  Instead, the ALJ looked to the testimony of Dr. Atkin, who indicated that "there was a good possibility that her limitations would improve, [although] it was difficult to estimate how much because there was not any substantial period of documented abstinence."[33](R.35)

In support of the state physicians' opinions, who have not directly evaluated Velasquez's physical and mental condition, the ALJ stated that the non-examining physicians "provided specific reasons for their opinions about the claimant's residual functional capacity showing that the opinions were grounded in the evidence in the case."(R.35)  However, based on the record there is no explanation of these "specific reasons."  It is clear that the ALJ was aware of Velasquez's medical condition because the ALJ determined that the claimant "has a medically determinable impairment that could reasonably be expected to produce the pain and the other symptoms" alleged by Velasquez.(R.32)

But to support her conclusions, the ALJ essentially rejected her own findings by attacking Velasquez's credibility.[34]  The ALJ

---

[32]Dr. Munger stated the claimant was able to perform sedentary work without oxygen with highly selected tasks/risks under close supervision.  Dr. Munger did not specify a date by which the claimant could begin or return to these selected work activities and noted that Velasquez's condition would progressively decline.

[33]Dr. Atkin based his conclusion from the lack of detailed progress notes by Dr. Munger measuring the claimant's physical abilities.

[34]These findings include: the claimant is able to perform some of her past relevant work; and the claimant has the residual functional capacity to perform a significant range of light work

noted that "the claimant exaggerates her symptoms of mental problems."(R.33)  Specifically, the ALJ concluded "that it is the claimant's difficulty with her domestic relationships that necessitates treatment of mental health problems, rather than a disabling mental health condition."(R.33)  The ALJ also stated that "the claimant exaggerates her symptoms of cystic fibrosis."(R.32)  In supporting these conclusions, the ALJ noted that "the claimant is not always compliant with her treatment" and "she had not followed up for two years regarding her cystic fibrosis."(R.33)  The ALJ also alleged inconsistencies in Velasquez's statements about her substance abuse problems, leading the ALJ to concluded that "only the juxtaposition of treatment records reveals the claimant's determination to take amphetamines, either by self medication or by prescription." (R.34)  Based on the alleged inconsistencies, the ALJ found that "the claimant is not credible regarding her inability to do any type of work."(R.34)

After reviewing the record, it is apparent that the ALJ based her finding[35] solely on the opinions of the non-examining state medical consultants, Dr. Atkin's medical expert testimony and Velasquez's inconsistent testimonies about her alcohol and drug abuse in determining the claimant's RFC.(R.35)  The court finds that the ALJ failed to properly assess Velasquez's RFC,

---

[35]The claimant has the residual functional capacity to perform a significant range of light work.

14

because the ALJ did not provide the "specific, legitimate reasons" pursuant to SSR 82-62, as to why she did not consider all available medical evidence relating to Velasquez's medical condition.

**b. Velasquez's Past Relevant Work physical and mental demands**

Pursuant to the Social Security Regulations, the ALJ is required to make specific findings regarding the physical and mental demands of claimant's PRW.[36]  Velasquez argues that the ALJ did not make these required specific findings regarding her PRW's physical and mental demands.(R.36)[37]  "[F]or a claim involving a mental/emotional impairment, care must be taken to obtain *a precise description of the particular job duties which are likely to produce tension and anxiety....*"[38]  20 C. F. R. further provides "we consider that your work experience applies when it was done within the last 15 years, lasted long enough for you to learn how to do it, and was a substantial gainful activity."[39]  The ALJ may also use an impartial Vocational Expert (VE) to help determine the strength and skill requirements of PRW.

Mr. Kenneth Lister, the VE, testified that "the claimant's

---

[36]*See supra* note 13.

[37]*See* Mem. in Supp. of Reversal of Commissioner's Decision p. 18.

[38]*Supra* note 13. (Emphasis added).

[39]20 C. F. R. §§ 40431565(a), 416.965(a).

job as a legal secretary was sedentary, skilled work; her job as
an administrative assistant was sedentary, skilled work; her job
as a housekeeper was light, unskilled work; her job as a kitchen
helper was medium, unskilled work; her job as a data entry person
was sedentary, semi-skilled work; and her job as a bus person was
medium, unskilled work."(R.36)  The VE did not, however, specify
the particular skill and demand requirements associated with each
of the claimant's PRW.  Thus the court finds that Mr. Lister
provided incomplete testimony.  Despite this shortcoming, the ALJ
relied on the VE's testimony in finding that "the claimant is
able to perform some of her past relevant work."[40]

In making this finding, the ALJ mischaracterizes the VE's
evaluation and assumes that alternately sitting, standing, and
walking allows the claimant to perform a significant range of
light work with limitations.  Using the VE's testimony and
claimant's PRW list, the ALJ found that Velasquez is capable of
performing PRW as a data entry person, a photographer/artist and
a legal secretary.(R.36)  The ALJ determined "that the claimant's
past light and sedentary work falls within her current residual
functional capacity for light work activity with
limitations."(R.36)  The ALJ then went on to conclude that the
claimant can perform her past relevant work as a data entry
person, a photographer/artist, and a legal secretary as generally

---

[40]*See* ALJ's finding # 6 "The claimant is able to perform some of her past relevant work."

performed.(R.36)

The ALJ's findings obviate the fact that Velasquez should change positions frequently, must avoid contact with the general public and has moderate limitations in understanding responsibilities and carrying out tasks.(R.294, 311, 357, 426) Specifically, in finding six[41] the ALJ does not consider the physical and mental requirements associated with the positions of a data entry person, a photographer/artist and a legal secretary. For example, the position of a data entry person usually requires the person to be stationed at a desk for prolonged periods and answer phone calls.  The photographer/artist position requires interaction with the public and "work in coordination with or in proximity to others."(R.38) And finally, the legal secretary position requires strong ability to understand, remember and carry out detailed instructions, respond appropriately to criticism from supervisors, and to get along with peers and co-workers.  The physical and mental demands of each of these positions are in direct contradiction with the opinions of claimant's treating professionals and the ALJ's finding number five.[42]  To wit, claimant "must be able to change positions

---

[41]*Supra* note 36.

[42]Finding # 5 "The claimant has the following residual functional capacity: to perform light work activity with limitations.  She must be able to change positions occasionally, or up to one third of the time.  She must avoid contact with the general public.  She has moderate limitations, up to one third of the time, in her ability to understand, remember and carry out detailed instructions; to work in coordination with or in proximity to others without being distracted by them; to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors; to get along with co-workers or peers without distracting them or

occasionally, or up to one third of the time" and the claimant "must avoid contact with the general public."(R.38)

Contrary to the ALJ's opinion, the record does not support that being able to sit for up to one third of a workday would allow Velasquez to perform a significant number of jobs in the range of light work.  In reaching this conclusion the ALJ's decision failed to consider Velasquez's severe physical and mental impairments in evaluating her PRW.(R.36)

The court finds another inconsistency within the ALJ's opinion.  The ALJ is aware of Velasquez's physical and mental restrictions in finding number five[43], but concludes that the claimant can perform PRW as generally performed, which requires skills the claimant is lacking.(R.36)  As noted in the claimant's medical history, the treating or examining medical professionals have identified numerous physical and mental limitations which are clearly inconsistent with competitive employment. Particularly, claimant suffers from depression with poor concentration, does not seem to get along with people very well, is not able to sit for prolonged periods of time, and has limitations in her ability to understand and follow instructions. (R.294, 357, 383-85, 426)

The court believes that, if the ALJ had reviewed and applied

---

exhibiting behavioral problems."

[43] *Supra* note 38.

18

to her analysis all medical evidence as to Velasquez's impairments, the ALJ would have established a clearer picture of claimant's true ability to perform PRW.  Thus, the ALJ failed to make a function-by-function assessment of Velasquez's limitations when she found that "the claimant's past light and sedentary work falls within her current residual functional capacity for light work activity with limitations."[44]  This resulted in the ALJ overlooking some of Velasquez's limitations based on her physical and mental impairments.(R.35, 38, 306, 350, 353, 363, 364, 495).  Although, there is a lot of medical evidence in the record that the ALJ cites to, the Court finds the ALJ failed to fully and properly develop the record as it relates to claimant's PRW physical and mental demands.

## c. Velasquez's ability to perform her Past Relevant Work based on her Residual Functional Capacity

In determining whether claimant can perform PRW, the ALJ is required to compare the findings associated with claimant's RFC determination and the mental and physical demands of claimant's PRW.[45]  If the ALJ concludes claimant is capable of performing PRW, such a conclusion must be supported with a clear and explicit rationale pursuant to SSR 82-62.[46]

---

[44]Supra *note* 36.

[45]Supra *note* 13.

[46]*Id.*

Here Velasquez argues that the ALJ based her findings on the VE's evaluation report and did not correctly assess her ability to perform PRW.(R.37)  The ALJ concluded the claimant's light and sedentary work falls within her current residual functional capacity for light work activity with limitations and that she can perform her past relevant work as a data entry person, a photographer/artist, and a legal secretary as generally performed.(R.36)  But, the ALJ has not supported her findings with the clear and explicit rationale required under SSR 82-62.(R.37)

Based on the analysis addressed in subsections (a) and (b) of this decision, the ALJ made improper findings in determining Velasquez's RFC and PRW, when she did not consider all available medical evidence.  The ALJ found that Velasquez "retains the residual functional capacity to perform light work activity with limitations," based on limited medical resources.(R.34,35)  The ALJ based her finding that "the claimant is able to perform some of her past relevant work," on the VE's incomplete testimony regarding claimant's PRW skills and strength requirements.(R.36)

The ALJ noticed this mistake and admitted to the improper finding that claimant could perform PRW because she did not post earnings at a SGA during the 15 years prior to her alleged onset of disability.[47]  However, the ALJ found the error to be harmless

---

[47]*See* trial record 87, 89. *See* also Def's Answer Brief p.5, 6.

and proceeded to step five of the sequential evaluation process,
and alternatively found that the claimant could perform other
work existing in significant numbers in the national economy.[48]

Thus, a review of the record shows a lack of the ALJ's
consideration of all relevant evidence including the opinions of
claimant's treating or examining medical professionals, and
physical and mental demands of PRW.  The overlook of such
relevant evidence leads to the flaw in the ALJ's finding that
Velasquez can continue her PRW as a data entry person, a
photographer/artist, and a legal secretary based on her RFC.

## II. The ALJ erred in concluding that Velasquez was able to perform other jobs existing in the national economy consistent with her residual functional capacity, age, education and work experience.

At step five of the sequential evaluation process the ALJ
bears the burden of presenting evidence that the claimant has the
RFC to do work other than PRW.[49]  RFC represents the most an
individual can do despite the individual's limitations or
restrictions.[50]  To aid the Commissioner with the step five
burden, the SSA has developed the Medical-Vocational
Guidelines.[51]  Called the "grids," they serve as a guideline in

[48]*See* trial record 36, 38 (finding 6).

[49]*Thompson*, 987 F.2d at 1487.

[50]SSR 96-8p, 1996 WL 274184.

[51]20 C. F. R. §404.1569 subpt. P, app. 2.

21

considering a claimant's age, educational background, and work experience along with the claimant's ability to engage in work in the national economy at various levels of exertion (sedentary, light, medium, heavy and very heavy).  In evaluating claimant's ability to perform PRW or other work in the national economy, the ALJ may also use the expertise of a VE.

Here, Velasquez argues that the ALJ completely disregarded her extensive record of mental and physical impairments, and instead considered the VE's evaluation in denying her SSI. (R.39) The ALJ found that "the medical evidence indicates that the claimant has the following medically determinable "severe" impairments: mild cystic fibrosis, low back strain secondary to overuse, asthma, attention deficit disorder (ADD), personalty disorder with paranoid, borderline and obsessive compulsive features, mood disorder, and history of substance abuse."(R.31) Based on this finding the ALJ was aware of claimant's inability to work well with others, limited attention to detail and personal instabilities as significant limitations on claimant's ability to perform numerous jobs in the national economy.(R.387) However, the ALJ concluded that "...although the claimant's exertional limitations do not allow her to perform the full range of light work...there are a significant number of jobs in the national economy that she could perform."  The ALJ's findings of insignificant physical and mental restrictions were buttressed by

the conclusion that Velasquez's combined impairments were not a barrier for her to perform light and sedentary work.(R.38)

Here, the VE testified that Velasquez had engaged previously in some light[52] and sedentary skilled work as a legal secretary, administrative assistant and a photographer/artist.(R.36) Given this, the VE testified that "she is capable of making a vocational adjustment to other work" and could work as office helper and a house sitter.(R.37)

In reaching her decision, the ALJ discounted the opinions of Dr. Munger, Dr. Kirkham and Dr. Numaguchi. Dr. Munger, who saw and treated the claimant five times within a six month period, stated that Velasquez's condition would progressively decline and he was not able to tell when claimant could return to work.(R.426) The ALJ gave little, if any weight to Dr. Munger's opinion allegedly because it was "unsupported by detailed progress notes measuring the claimant's physical abilities."(R.35) In similar fashion, the ALJ also rejected the opinions of Dr. Kirkham and Dr. Numaguchi. Dr. Kirkham opined that Velasquez had a GAF of 48[53], indicating a major depressive and personality disorder with paranoid, borderline and obsessive compulsive features.(R.26) Dr. Numaguchi gave Velasquez's

---

[52] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."

[53] *Supra* note 3.

medical condition a GAF of 50[54], indicating "a major depressive disorder, recurrent, moderate, amphetamine abuse, alcohol abuse and borderline personality disorder."(R.27)  Finally, the ALJ discounted Velasquez's subjective complaints and testimony because of inconsistencies in the record based on claimant's "sporatic treatment record" and non-compliance with treatment.(R.33)

Despite the ALJ's own awareness of Velasquez's medical condition summarized in finding five,[55] the ALJ concluded that Velasquez "is capable of making successful adjustment to work that exists in significant numbers in the national economy."(R.37)  Based on the record, the ALJ's conclusion is not supported by substantial evidence in the record.  The ALJ's analysis at step four as to Velasquez's ability to perform her PRW undermined the analysis at step five.

Since the ALJ did not carefully consider Velasquez's functional capacities to support an RFC assessment based on claimant's physical and mental impairments, the ALJ overlooked the limitations or restrictions that would narrow the ranges and types of work Velasquez is able to do.

---

[54]A GAF of 50 indicates serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job).

[55]*Supra* note 38.

## CONCLUSION

For reasons stated above, the Court recommends that this matter be REVERSED and REMANDED to the Commissioner for further administrative consideration.  Specifically, the ALJ should conduct a new assessment based on the submitted evidence as to whether or not Velasquez's impairments prohibit her from performing PRW analyzed under step four of the sequential evaluation process, and for a further assessment of jobs available in the national economy.  Finally, this new assessment should address claimant's transferable skills at step five.

Copies of the foregoing report and recommendation are being mailed to all parties who are hereby notified of their right to object.  The parties must file any objection to the Report and Recommendation within 10 days after receiving it.  Failure to object may constitute a waiver of objections upon subsequent review.


DATED THIS 11th day of October, 2007.


BY THE COURT

BROOKE C. WELLS
United States Magistrate Judge